1
2

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF PUERTO RICO

3
4

**MAYRA ORTIZ-RODRIGUEZ, et. al..**

5

**Plaintiffs,**

6

**v.**                                                      CASE NO. 14-1529 (GAG)

7

**CONSORCIO DEL NOROESTE, et al.,**

8

**Defendants.**

9
10

## OPINION AND ORDER

11

    Mayra Ortiz-Rodriguez ("Ortiz") and Lilian Rodriguez ("Rodriguez"), (collectively

12

"Plaintiffs") brought this action against the Northwestern Consortium ("Consortium"), as well as

13

Samuel Sanchez–Tirado ("Defendant Sanchez") in his personal and official capacity as the

14

executive director of the Consortium, (collectively "Defendants"), seeking redress for alleged acts

15

of discrimination in violations of Plaintiffs rights under the First, Fifth and Fourteenth amendments

16

of the Constitution of the United States.  (Docket No. 1.)  In addition, Plaintiffs invoke the Court's

17

supplemental jurisdiction for claims arising under the Puerto Rico personnel law, P.R. LAWS ANN.

18

tit. 3, §§ 130, *et seq*, Law 382 of 1950, P.R. LAWS ANN. tit. 29, §§ 136-168; and Law 100 of 1959,

19

P.R. LAWS ANN. tit. 29, § 146, *et. seq.*.

20
21
22
23
24

Civil No. 14-1529 (GAG)

Currently before the Court is Defendants' motion for summary judgment seeking dismissal of all claims.[1]   (Docket No. 35.)   Plaintiffs opposed, and Defendants replied.   (Docket Nos. 48; 56.)

## I.       Relevant Factual and Procedural Background

The Puerto Rico Family Department ("Family Department") and the Northwest Consortium entered into a contract to offer services for needy families, this agreement is also known as the "Temporary Assistance for Needy Families" ("TANF").   (Docket Nos. 36 ¶ 1; 48-1 at 1 ¶ 1.)   The TANF Program has always been administered by the Family Department, but the Consortium served as a delegate agency to administer the TANF Program funds for the period of time provided by the agreement and allocated the necessary funds to cover the costs.   (Docket Nos. 36 ¶ 3; 48-1 at 1 ¶ 3.     The agreement was originally set to begin November 7, 2011 until September 30, 2012.   (Docket Nos. 36 ¶ 2; 48-1 at 1 ¶ 2.)   However, the date of termination of the agreement and its validity were extended on multiple occasions.   (Docket Nos. 36 ¶ 4; 48-1 at 1 ¶ 4.)   Amendments B and C extended the date of termination of the agreement until September 30, 2013.   (Docket Nos. 36 ¶ 5; 48-1 at 1 ¶ 5.)   Amendment E extended the date of termination of the agreement until March 31, 2014.   Id.

Defendant Sanchez is the executive director of the Consortium.   (Docket Nos. 36 ¶ 6; 48-1 at 1 ¶ 6.)     The Consortium hired employees to carry out the TANF services delegated by the agreement.   (Docket Nos. 36 ¶ 8; 48-1 at 2 ¶ 8.)   Plaintiffs were hired as term, transitory employees with fixed expiration dates, to carry out the services of the TANF Program.   (Docket Nos. 36 ¶¶ 8, 10, 16; 48-1 at 2 ¶ 8, 10, 16.)

---

[1] The pending motion for summary judgment was initially filed by Defendant Sanchez. Co-Defendant the Consortium then joined Defendant Sanchez's motion, incorporating by reference all arguments therein. (Docket No. 38.)   As such, the Court will reference the pending motion as Defendants' motion for summary judgment.

Civil No. 14-1529 (GAG)

### A. <u>Plaintiff Lilian Rodriguez</u>

Plaintiff Rodriguez was employed on January 10, 2012.  (Docket Nos. 36 ¶ 11; 48-1 at 2 ¶ 11.)  Rodriguez's appointment was valid from January 11, 2012 to June 30, 2012.  (Docket Nos. 36 ¶ 12; 48-1 at 2 ¶ 12.)  Plaintiff Rodriguez accepted transitory position to work and perform functions for the administration of the TANF Program and throughout her employment performed functions for the administration of the TANF Program.  (Docket Nos. 36 ¶¶ 16, 17; 48-1 at 2 ¶¶ 16-17.)

Plaintiff Rodriguez was originally appointed to work from January 11, 2012 to June 30, 2012.  The Consortium extended Plaintiff Rodriguez's original appointment as a transitional employee on five occasions: (a) from July 2, 2012 to December 31, 2012; (b) from January 1, 2013 to May 31, 2013; (c) from June 1, 2013 to September 30, 2013; (d) from October 1, 2013 to December 31, 2013; and, (e) from January 1, 2014 to March 31, 2014.  (Docket Nos. 36 ¶¶ 20, 23-24; 48-1 at 2 ¶¶ 20, 23-24.)  Some of the extensions were made by the New Progressive Party ("NPP") administration and others by the Popular Democratic Party ("PDP") administration.  (Docket Nos. 36 ¶ 21; 48-1 at 2 ¶ 21.)  Rodriguez's last two extensions of temporary appointment were made by Defendant Sanchez, a member of the PDP.  (Docket Nos. 36 ¶¶ 27, 28; 48-1 at 2 ¶¶ 27, 28.)  Plaintiff Rodriguez's job extension offers were all documented in letters that expressly stated that the transitional appointment did not entitle Rodriguez to a career position and that the extension of Rodriguez's appointment corresponded to the extension of the agreement between the Consortium and the Family Departments' TANF Program.  (Docket Nos. 36 ¶ 25; 48-1 at 2 ¶ 25.)  On December 18, 2013, Defendant Sanchez notified Plaintiff Rodriguez of her final extension of transitory employment, from January 1, 2014 to March 31, 2014.  (Docket Nos. 36 ¶ 30; 48-1 at 2 ¶ 30.)  In that letter, Defendant Sanchez made reference to the termination of the agreement between the Family Department and the Consortium.  <u>Id.</u>

Civil No. 14-1529 (GAG)

    B.  <u>Plaintiff Mayra Ortiz</u>

Plaintiff Ortiz began working at the Consortium during February 1999.  (Docket Nos. 48-1 at 5 ¶ 1; 56 ¶ 1.)  On January 2, 2013 Ortiz started working with the TANF Program as transitional employee.  (Docket Nos. 36 ¶ 13; 48-1 at 2 ¶ 13.)  Ortiz's appointment was valid from January 1, 2013 to May 30, 2013.  (Docket Nos. 36 ¶ 14; 48-1 at 2 ¶ 14.)  Plaintiff Ortiz's appointment was a transitory position with the administration of the TANF Program.  (Docket Nos. 36 ¶¶ 16, 17; 48-1 at 2 ¶¶ 16-17.)  Throughout her employment she performed functions for the administration of the TANF Program.  <u>Id.</u>

    Plaintiff Ortiz's original appointment was from January 1, 2013 to May 31, 2013.  (Docket Nos. 36 ¶ 32; 48-1 at 2 ¶ 32.)  Ortiz's transitory position appointment was extended on three occasions:  (a) from June 1, 2013 to September 30, 2013; (b) from October 1, 2013 to December 31, 2013; and, (c) from January 1, 2014 to March 31, 2014.  (Docket Nos. 36 ¶¶ 31, 32; 48-1 at 2 ¶¶ 31, 32.)  Ortiz's last two extensions of temporary appointment were made by Defendant Sanchez.  (Docket Nos. 36 ¶¶ 34, 35; 48-1 at 3 ¶¶ 34, 35.)  Plaintiff Ortiz's job extension offers were all documented in letters that expressly stated that the transitional appointment did not entitle Ortiz to a career position and that the extension of Ortiz's appointment corresponded to the extension of the agreement between the Consortium and the Family Departments' TANF Program. (Docket Nos. 36 ¶ 33, 36, 37; 48-1 at 3 ¶ 33, 36, 37.)  On, December 18, 2013, Defendant Sanchez notified Plaintiff Ortiz of her final extension of transitory employment, from January 1, 2014 to March 31, 2014.  (Docket Nos. 36 ¶ 33, 36; 48-1 at 3 ¶ 33, 36.)  In that letter, Defendant Sanchez made reference to the termination of the agreement between the Family Department and the Consortium.  <u>Id.</u>

Civil No. 14-1529 (GAG)

C. Alleged acts of political discrimination

When Plaintiffs were hired, the Consortium was under the administration of the New Progressive Party ("NPP").  (Docket Nos. 36 ¶ 18; 48-1 at 2 ¶ 18.)   Following the 2012 elections, Alejandro Garcia Padilla of the Popular Democratic Party ("PDP") took office as Governor of the Commonwealth of Puerto Rico in January 2013.  (Docket Nos. 36 ¶ 19; 48-1 at 2 ¶ 19.)

Plaintiffs Rodriguez and Ortiz are publically affiliated with the NPP. (Docket Nos. 36 ¶¶ 45, 46; 48-1 at 3 ¶¶ 45, 46.)   Defendant Sanchez is publically affiliated with the PDP.  (Docket Nos. 36 ¶ 47; 48-1 at 3 ¶ 47.)  Plaintiffs Ortiz and Rodriguez had knowledge that the agreement between the Family Department and the Consortium for the TANF Program would expire March 31, 2014, they also knew their appointments ended when the TANF Program ended.  (Docket Nos. 36 ¶¶ 52, 53, 54; 48-1 at 3 ¶¶ 52-54.)  According to Plaintiffs, Defendant Sanchez had knowledge of Rodriguez and Ortiz's affiliation with the NPP.  (Docket No. 48-1 at 6 ¶ 3.)

Plaintiffs were irregular transitory employees at the time of their dismissal.  (Docket Nos. 36 ¶ 9; 48-1 at 2 ¶ 9.)  Defendants state that upon the termination of Plaintiffs job, no other employee was assigned to perform the duties and responsibilities of the TANF Program.  (Docket Nos. 36 ¶¶ 56, 57; 48-1 at 3 ¶¶ 56, 57.)  Defendants further state that Plaintiffs were dismissed because of a layoff plan.[2]  (Docket No. 36 ¶ 58)  Plaintiffs deny this statement, arguing that the real reason behind Plaintiffs dismissal was political discrimination.  (Docket No. 48-1 at 4-5 ¶ 58.)

Plaintiffs contend Defendant Sanchez stated in front of Plaintiffs that NPP transitory employees would be left out.  (Docket No.  48-1 at 6 ¶ 5.)   Defendants deny Sanchez ever said that NPP employees would be left out, arguing that Defendant Sanchez made a job offer to Plaintiffs, but Plaintiffs refused to accept his offer because it was for a short term temporary

---

[2] Plaintiffs argue Defendants' statement at Docket No. 36 ¶ 58 should be dismissed for lack of clarity. They contend Plaintiffs were dismissed for politically affiliated reasons.  (Docket No. 48-1 at 4 ¶ 58.)

Civil No. 14-1529 (GAG)

position.  (Docket No. 56 ¶ 5.)  Defendants sustain Plaintiffs declined Sanchez's job offer because their previous administrator had promised them permanent positions after their contracts with the TANF Program were over.  Id.

In turn, Defendants aver Plaintiffs' dismissal was part of a layoff plan due to the termination of the TANF Program.  (Docket No. 36 ¶ 58.)  Plaintiffs deny this assertion, arguing Plaintiffs were dismissed because of their affiliation with the NPP Party considering that the employees that were not laid off —or newly hired temporary employees— were all affiliated with the PDP.[3]  (Docket No. 48-1 at 4 ¶ 58; 7 ¶ 8. )

Specifically, Plaintiffs assert they were discriminated on account of their political affiliations as follows: (1) they were constantly harassed by Defendant Sanchez, Doris Vega, Sanchez's second-in-command, and by other temporary employees at the Consortium whom also were PDP affiliates; (2) Defendant Sanchez had employees remove Plaintiffs equipment prior to the expiration of their appointments and Plaintiffs were ordered to exhaust their sick and leave

---

[3] Defendants deny and object Plaintiffs statement that all new temporary employees are affiliated with the PDP, arguing said statement is speculative and constitutes inadmissible hearsay. (Docket No. 56 at ¶ 8.) In her deposition, Plaintiff Ortiz testifies about the employees that were assigned the duties she previously performed.  She further details that she knew that Aleida Rivera, "Firpo," Ortiz, Adalis Crispin and Danny Mendez took over her duties because these employees "made it known" that they had been appointed to said positions.  (Docket No. 36-2 at 20.) Ortiz also stated that the work area was also revealing because at the Consortium work areas are divided and grouped by job classification. Id. Lastly, Ortiz states she was aware of the employees' affiliation with the PDP because of their political activism, particularly during the elections where they publicly participated in rallies, motorcades and meetings for the PDP. Id. At 21.

The record evidence reveals that Plaintiffs were aware of the all the personnel changes that were being made.  Although among the factors Plaintiffs base their knowledge are statements made by the employees themselves, those statements do not constitute hearsay within the meaning of Rule 801 because said statements are not being introduced to prove the truth of the matter asserted, instead Plaintiff     Ortiz is testifying as to her personal knowledge of the fact that said employees were performing her duties. A statement offered to show declarant's knowledge of facts, not the facts stated.  See Crowley v. L.L. Bean, Inc., 303 F.3d 387, 408 (1st Cir. 2002) (reference by a supervisor to "Crowley's little stalker," when offered to show management's awareness of a co-worker's behavior, and not to show that the co-worker was actually a stalker, was not hearsay); see also Bennett v. Nucor Corp., 656 F.3d 802, 811 (8th Cir. 2011).

The Court therefore finds that Plaintiffs' testimony about the personnel changes that took place shortly before their dismissal, including the reassignment of their duties, to new temporary employees affiliated with the PDP, does not constitute hearsay pursuant to Fed. R. Evid. 801.

benefits; (3) other temporary employees affiliated with the PDP were not dismissed; and (4)  the remaining temporary employees had fewer years of service and experience at the Consortium.  Id.

In her deposition, Plaintiff Ortiz explains that she believes her dismissal had political animus because she had more experience was better prepared than those employees that were not laid off, and all employees that were not dismissed were members of the PDP.  (Docket No.  36-2 at 15.)

In their Complaint, Plaintiffs allege Defendant Sanchez, directly or by way of his subordinates, discriminated against them on account of their political affiliation with the NPP, creating continuous harassment of Plaintiffs, subjecting them to a hostile work environment and ultimately terminating Plaintiffs' employment by failing to renew their employment contracts, on account of their constitutionally protected affiliation with the NPP.  (Docket No. 1 ¶ 15-19; 33.) Plaintiffs further allege that Defendant Sanchez hired, appointed and/or contracted new employees that were publically affiliated with the PDP, to perform duties and responsibilities previously performed by Plaintiffs.  (Docket No. 1 ¶¶ 36-37.)

Moreover, Plaintiffs allege the only reason for their dismissal was their opposition to the PDP.  (Docket No. 1 ¶ 47.)  Consequently, Plaintiffs request reinstatement, that Defendants be enjoined from discriminating against them because of their political beliefs, and compensatory damages.  Id. ¶¶ 56-57.

Defendants move for summary judgment in their favor, arguing Plaintiffs do not meet the requisite elements of a political discrimination claim.  (Docket No. 35.)  Defendants argue in the alternative, that dismissal is warranted under the Mt. Healthy defense because they demonstrate that they would have taken the same action regardless of Plaintiffs' affiliation with the NPP.  Id. at 17.  Lastly, Defendants move for dismissal of Plaintiffs' due process claims under the Fifth amendment —because Defendants are not federal actors— and under the Fourteenth amendment

Civil No. 14-1529 (GAG)

because Plaintiffs, as temporary employees, never had protected property interest over their employment.[4]  Id. at 18-19.

Plaintiffs oppose Defendants' motion, arguing there are genuine issues of material fact that preclude the entry of summary judgment.  (Docket No. 48.)   Plaintiffs provide an additional statement of uncontested facts.  (Docket No. 48-1.)  Defendants replied Plaintiffs' opposition brief and opposed Plaintiffs' additional statement of facts, raising objections as to the admissibility of Plaintiffs' additional statement of facts and evidence provided in support.  (Docket No. 56.)

## II.    Defendants' Objections to Plaintiffs' Additional Statement of Uncontested Facts

As a threshold matter, the Court addresses Defendants' objections regarding the admissibility of some of Plaintiffs' additional statement of uncontested facts, arguing these are inadmissible hearsay, and should be stricken from the record.  (Docket No. 56.)  Facts provided in support of summary judgment "typically set forth in affidavits, depositions, and the like, must have evidentiary value; as a rule, 'evidence that is inadmissible at trial, such as inadmissible hearsay, may not be considered on summary judgment.'"  Noviello v. City of Boston, 398 F.3d 76, 84 (1st Cir. 2005) (quoting Vazquez v. Lopez-Rosario, 134 F.3d 28, 33 (1st Cir. 1998)).

Plaintiffs failed to respond Defendants' objections, therefore, the Court dives into the admissibility of Plaintiffs' statements without their involvement.

### A.    "Clean House" Statement by Doris Vega

Plaintiffs posit that shortly after the PDP administration took office, Doris-Vega told Plaintiffs that "they were going to clean house."   (Docket Nos. 48-1 at 6 ¶ 4; 36-2 at 12.) Defendants deny and object to Plaintiffs "clean house" statement, arguing it constitutes

---

[4]  In their opposition, Plaintiffs concede and acknowledge that dismissal of their claims under the Fifth and Fourteenth amendments is proper.  (Docket No. 48 at 4.)  Thus, the Court's grants summary judgment as to Plaintiffs' due process claims.

Civil No. 14-1529 (GAG)

1    inadmissible hearsay under Rule 801(c) of the Federal Rules of Evidence and is irrelevant under

2    Rule 401.  (Docket No. 56 ¶ 4.)  Plaintiff Ortiz testifies about a statement made by Doris Vega in

3    her presence.  Ortiz sustains Vega said that "the new administration was going to clean house with

4    the transitory employees who worked for the NPP."  (Docket No. 48-1 at 6 ¶ 4.)  In support of this

5    statement, Plaintiffs point to their own deposition testimony in which they both say they witnessed

6    Doris Vega's "clean house" statement.

7         According to the Federal Rules of Evidence, an admission by a party-opponent "to an agent

8    or employee on a matter within the scope of th[e employment] relationship"  is not hearsay.  FED.

9    R. EVID. 801(d)(2)(d).   To be excluded as hearsay under this rule, evidence must be provided to

10   evince that the statement was made within the scope of the declarant's employment and that the

11   declarant had the authority to make the admission.  Vazquez, 134 F.3d at 35.  To introduce

12   statement under Rule 801(d)(2)(D) a party "must establish, by a preponderance of the evidence, (1)

13   that an agency relationship existed; (2) that the statements were made during the course of the

14   relationship; and (3) that the statements relate to matters within the scope of the agency."  Gomez

15   v. Rivera Rodriguez, 344 F.3d 103, 116 (1st Cir. 2003) (citing Larch v. Mansfield Mun. Elec.

16   Dep't, 272 F.3d 63, 72 (1st Cir. 2001)).

17        The agency or employee relationship cannot be proven just by relying on out-of-court

18   statements.  Plaintiffs' declaration of Vega's statement could only be admissible by the party-

19   opponent hearsay exclusion. Plaintiffs bring Declarant-Doris Vega's "clean house" statement by

20   way of their Plaintiffs' own testimony; however, nowhere in the cited record do Plaintiffs provide

21   a direct statement by Vega. Moreover, Plaintiffs also fail to authenticate Vega's agency

22   relationship, or that she had the authority to make such an admission on Sanchez's behalf.

23   Plaintiffs limit their argument by stating that Vega is Defendant Sanchez's "second-in-command"

24

Civil No. 14-1529 (GAG)

(Docket No. 48-1 at 6 ¶ 4), however, they fail to point to record evidence to support Vega's employment relationship.

Although Plaintiffs witnessed Doris Vega's statement, personal knowledge does not suffice when a statement made by a non-party is brought for the truth of the matter asserted, i.e., its politically charged content.  Thus, the statement cannot be brought by way of Plaintiffs' testimony.

Consequently, Plaintiff Ortiz's testimony where she echoes Vega's "clean house" statement is inadmissible under the party-opponent hearsay exclusion of Rule 801(d)(2).   As such, the statement constitutes inadmissible hearsay under Rule 801 and cannot be considered by the Court at this summary judgment stage.

    B. <u>Defendant Sanchez's statement that employees affiliated with NPP were going to leave and that he was going to take away their work spaces.  (Docket No. 48-1 at 7 ¶ 10.)</u>

This statement is one of multiple statements Plaintiffs bring as made by Defendant Sanchez.  Interestingly, Plaintiffs' evidence in support of these statements is circumscribed to their own deposition testimony.  Plaintiffs' declaration of statements made by Defendant Sanchez, if made within the scope of his employment, would be permissible under the scope of the party-opponent exclusion of Rule 801(d)(2).  It is an uncontested fact that Defendant Sanchez was Executive Director of the Consortium at the time of the events and is a named Defendant in the captioned action, thus, he is a party-opponent within the meaning of Rule 801(d)(2).   However, Plaintiffs' proposed statement involves additional declarants that carried over Defendant Sanchez's expressions. What Plaintiffs then really proposed is Defendant Sanchez's statement to an employee, who then relays the statement to Plaintiffs.  This testimony contains multiple out-of-court statements, and, as per Rule 805, constitutes double-hearsay.  To be admissible, each statement —Defendant Sanchez's statement to an employee and the statement made by the

Civil No. 14-1529 (GAG)

employee to Plaintiffs— must fall under a hearsay exception or exclusion, here party-opponent exclusion.[5]

According to Plaintiffs, Defendant Sanchez stated that those employees that belonged to the PDP were going to leave and would be removed from their work areas.[6]  (Docket No. 48-1 at 7 ¶ 10.)  The Court holds this statement constitutes inadmissible hearsay.  Id.  In her deposition testimony, Plaintiff Rodriguez said that Sanchez used his subordinates to harass Plaintiffs.  (Docket No. 36-3 at 33.)  Rodriguez states that Defendant Sanchez "had made comments to them to the effect that they were going to take us away from our work areas."  Id.  Later on those subordinates would make comments in the hallway, close to Plaintiff Rodriguez's work area.  Id.  However, when asked to identify Defendant Sanchez subordinates, Rodriguez stated she did not know their names.  For purposes of the party-opponent exclusion of Rule 801(d)(2), a statement that cannot be attributed cannot be admissible.  Vazquez, 134 F.3d at 34.  If the author of the original statement is unknown, the statement cannot be admitted as party-opponent admission.  Id.

Although Plaintiffs present the statement as originally stated directly by Defendant Sanchez, the record evidence demonstrates that Plaintiff Rodriguez overheard it "through the grapevine" as part of office "hallway gossip" when she overheard other employees reiterating Sanchez's statement.  In her testimony, Plaintiff Rodriguez explains the hostile work environment was by and a direct result of Defendant Sanchez's antagonism towards their affiliation with the PDP.  As an example of the hostile environment, Rodriguez recounts one time she overheard some employees talking in the hallway, talking about and repeating the statements Defendant Sanchez

---

[5] Under Rule 805, the Court must assess each statement individually to determine its admissibility under an exception to the hearsay rules or is not defined as hearsay.  Fed. R. Evid. 805.

[6] Defendant deny and object Plaintiffs statement arguing it is inadmissible hearsay and that Plaintiffs admit that Sanchez Tirado made Plaintiffs a job offer they did not accept.  (Docket No. 56 ¶ 10.)  Defendants deny it, arguing Defendant Sanchez made Plaintiffs a job offer, but they rejected the offer because it was for temporary position.  (Docket No. 56 ¶ 10.)

**Civil No. 14-1529 (GAG)**

told them, regarding Plaintiffs' political affiliation.  Plaintiffs propose this statement as Defendant Sanchez's direct testimony, yet the record reveals that the statement is really a product of water cooler chatter.

"Insofar as the plaintiff is attempting to introduce this statement as evidence of *other* coworkers' harassing behavior, it is hearsay; its probative value ultimately depends on the truth of the declarant's own unsworn out-of-court utterance. It is, therefore, inadmissible." Noviello, 398 F.3d at 85.  "Were that statement offered as evidence of the declarant's contribution to the hostile work environment, it would likely be admissible.  In that event, its effect on the plaintiff would be the same regardless of the truth of the matter asserted."  Noviello, 398 F.3d at 85 (citing Mota v. Univ. of Tex. Houston Health Sci. Ctr., 261 F.3d 512, 526 n. 46 (5th Cir. 2001)).

Considering Plaintiffs fail to provide a non-hearsay objective —or any evidentiary purpose— the Court deduces that the statement is brought for the truth of the matter asserted, that is, to prove Defendants' alleged politically-motivated discriminatory animus that created a hostile work environment.  By the same token, Plaintiffs pleadings and arguments in opposition to summary judgment do not validate or suggest using the statement for "its impact on the work environment" as allowed by Noviello.  Thus, both statements constitute inadmissible hearsay as per Rule 801.  Because the identity of these declarant-employees is unknown, their statements cannot be certified under the party-opponent hearsay exclusion of Rule 801(d)(2).

C.   Defendant Sanchez stated to Plaintiff Rodriguez he could not receive Plaintiffs because they were undecided about affiliating with their group and he only saw people that belonged to their group.  (Docket No. 48-1 at 7 ¶ 7.)

Defendants object to this statement arguing it violates the anti-ferreting rule.[7]  In her deposition, Plaintiff Rodriguez asserts that she was told by other employees that Defendant

Civil No. 14-1529 (GAG)

Sanchez would not meet with Plaintiffs because they were "undecided about whether or not to affiliate [with] their group because Defendant Sanchez was only seeing people who belonged to their group. (Docket No. 33-6 at 15.) Rodriguez identifies these employees as Adalis Crispin, Danny Mendez, Aleida Rivera and Ylona Acevedo (collectively "Declarant-Employees"). Id.

Even though Defendants do not argue the above statement is hearsay, the Court finds evidentiary issues are present that warrant further scrutiny. Unlike the previous statement, Plaintiff Rodriguez identifies declarant-employees and provides the names of the employees that uttered the statement made by Defendant Sanchez about him only talking to PDP affiliates. To pass the evidentiary party-opponent muster, a plaintiff has the burden of establishing the existence of the agent/employee relationship of the declarant-employee. See Gomez, 344 F.3d at 116. Plaintiffs again fail to accompany their proposed statement with evidence in support of the agent/employee relationship. As such, the Court is unable to properly ascertain the employee/agent relationship of the declarant-employees. Without the requisite evidence in support, Plaintiffs fail to meet their burden. As per Rule 801, this statement constitutes inadmissible hearsay.

> D.  PDP transitory employees told Plaintiffs that Plaintiffs were going to leave because of their affiliation to the NPP.  (Docket No. 48-1 at 7 ¶ 9.)

The above reasoning also applies to this statement. Plaintiffs affirm they were told by PDP transitory employees that they were going to leave because of their affiliation to the NPP. (Docket No. 48-1 at 7 ¶ 9.) Defendants argue this statement is also irrelevant and constitutes inadmissible hearsay. (Docket No. 56 ¶ 9.) Plaintiffs bring the above statement made by PDP transitory, non-

---

[7] They also controvert it with Defendant Sanchez's own deposition testimony where he states he offered Plaintiffs temporary contacts, which they rejected because they were told by the previous administrator that they would be offered permanent positions upon the termination of their respective TANF Program. (Docket No. 56 ¶ 7.)

Civil No. 14-1529 (GAG)

party employees to Plaintiffs, to evince Defendants' politically discriminatory animus against them. Hence, the statement is offered for the truth of the matter asserted.

Again, Plaintiffs fail to satisfy their burden as to the employee/agent relationship required by the party-opponent hearsay exclusion of Rule 802(d)(2). As such, this statement is also inadmissible under Rule 801, and will be stricken from the record.

## III.    Standard of Review

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see FED. R. CIV. P. 56(a). "An issue is genuine if 'it may reasonably be resolved in favor of either party' at trial, . . . and material if it 'possess[es] the capacity to sway the outcome of the litigation under the applicable law.'" Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006) (alteration in original) (internal citations omitted). The moving party bears the initial burden of demonstrating the lack of evidence to support the non-moving party's case. Celotex, 477 U.S. at 325. "The movant must aver an absence of evidence to support the nonmoving party's case. The burden then shifts to the nonmovant to establish the existence of at least one fact issue which is both genuine and material." Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994). The nonmovant may establish a fact is genuinely in dispute by citing particular evidence in the record or showing that either the materials cited by the movant "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(B). If the court finds that some genuine factual issue remains, the resolution of which could affect the outcome of the case, then the court must deny summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Civil No. 14-1529 (GAG)

When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party and give that party the benefit of any and all reasonable inferences.  Id. at 255.  Moreover, at the summary judgment stage, the court does not make credibility determinations or weigh the evidence.  Id.  Summary judgment may be appropriate, however, if the non-moving party's case rests merely upon "conclusory allegations, improbable inferences, and unsupported speculation."  Forestier Fradera v. Mun. of Mayaguez, 440 F.3d 17, 21 (1st Cir. 2006) (quoting Benoit v. Technical Mfg. Corp., 331 F.3d 166, 173 (1st Cir. 2003)).

## IV.   Legal Analysis

Defendants move for summary judgment in their favor, arguing Plaintiffs do not meet the requisite elements of a political discrimination claim.  (Docket No. 35.)   Specifically, Defendants argue Plaintiffs fail to establish that their political affiliation was a substantial or motivating factor for the adverse employment action.  (Docket No. 35.)  Additionally, in the event that the Court finds Plaintiffs meet their *prima facie* case, Defendants argue, in the alternative, that dismissal is warranted under the Mt. Healthy defense because they demonstrate that the same action would have been taken, regardless of Plaintiffs' affiliation with the NPP.  Id. at 17.  Plaintiffs oppose Defendants Motion for Summary Judgment, arguing there are genuine issues of material fact that preclude summary judgment.  (Docket No. 48.)

### A.  Political Discrimination: *Prima Facie* Case

"[A] government employer cannot discharge public employees merely because they are not sponsored by or affiliated with a particular political party."  Galloza v. Foy, 389 F.3d 26, 28 (1st Cir. 2004) (citing Elrod v. Burns, 427 U.S. 347, 350 (1976)).  To establish a claim of political discrimination, Plaintiffs must show that: (1) they and the defendants have opposing political affiliations, (2) the defendants were aware of the employees' political affiliations, (3) an

Civil No. 14-1529 (GAG)

adverse employment action (e.g., an employment termination) occurred, and (4) political affiliation was a substantial or motivating factor for the adverse employment action.  Ocasio-Hernandez v. Fortuno-Burset, 777 F.3d 1, 5 (1st Cir. 2015) (internal quotations omitted).

The first three prongs are not at issue in the case at bar.  It is uncontested that Plaintiffs Rodriguez and Ortiz are publically affiliated with the NPP, and that Defendant Sanchez is publically affiliated with the PDP.   As a matter of fact, in his deposition testimony, Defendant Sanchez admits having knowledge of Plaintiffs' affiliation with the NPP.[8]  (Docket No. 48-1 at 6 ¶3.)

Plaintiffs' temporary employment contracts with the Consortium were terminated on March 31, 2016.   For purposes of political discrimination claims, contract non-renewal is considered an adverse employment action.  "An adverse employment action includes not only a discharge or a demotion, but also a government entity's refusal to promote, transfer, recall after a layoff, or even hire an employee."  Morales-Tañon. v. PREPA, 524 F.3d 15, 19 (1st Cir. 2008) (citing Rutan v. Republican Party of Ill., 497 U.S. 62, 79 (1990)).   Thus, Plaintiffs also satisfy this element of their claim.

### 1.  Substantial and Motivating Factor

The Court now turns to the crux of the parties' arguments.  To establish a prima-facie case, a plaintiff must show that party affiliation was a substantial or motivating factor behind a

---

[8] Defendants object the above arguing it violates the anti-ferreting rule because the record evidence is not in harmony with Plaintiffs' proposed statement. (Docket No. 56 ¶ 3.)  Instead, Defendants posit that in his deposition testimony, Sanchez admits having knowledge of Plaintiffs' affiliation but then clarifies that he had direct knowledge of Plaintiff Ortiz's affiliation by her own admission, whereas Plaintiff Rodriguez never admitted her affiliation directly to him.  (Docket No. 36-4 at 75-76.)  The Court notes Defendants' objection, nevertheless finds that it has no bearing.  Defendant Sanchez's admission —that he was aware of Plaintiff Rodriguez's affiliation with the NPP— is sufficient to satisfy the awareness element.   A defendant is not required to have direct knowledge.  It is well-established principle that "circumstantial evidence can suffice to show a defendant's knowledge of a plaintiff's political party."  Ocasio-Hernandez, 777 F.3d at 7; see also Martinez-Velez v. Rey-Hernandez, 506 F.3d 32, 44 (1st Cir. 2007).

Civil No. 14-1529 (GAG)

challenged employment action.  See Padilla-García v. Rodriguez, 212 F.3d 69, 74 (1st Cir. 2001).

To establish the causation, the "plaintiff bears the burden of producing sufficient evidence from

which a jury may infer that plaintiff's constitutionally protected conduct was a substantial or

motivating factor behind the adverse employment action." Maymi v. Puerto Rico Ports Auth., 515

F.3d 20, 28 (1st Cir. 2008) (citing Acevedo-Diaz v. Aponte, 1 F.3d 62, 66 (1st Cir. 1993)).  "[A]

plaintiff may not prevail simply by asserting an inequity and tacking on the self-serving conclusion

that the defendant was motivated by a discriminatory animus." Correa-Martínez v. Arrillaga-

Beléndez, 903 F.2d 49, 53 (1st Cir. 1990).

Defendants argue the causation element is not met.  They posit the evidence on record is

insufficient, and no reasonable jury could find that Plaintiffs' political affiliation with the NPP was

a substantial or motivating factor in the termination of their employment. (Docket No. 35.)  They

maintain Plaintiffs' political views had no bearing on the termination of their contracts.

"[S]tatements of political affiliation—unaccompanied by any specific factual information to

support [the] claim and unrelated to any employment action taken by [defendant] against

[plaintiff]—[are] patently insufficient to establish an act of political discrimination." Mercado-

Alicea v. P.R. Tourism Co., 396 F.3d 46, 52 (1st Cir. 2005) (alteration in original) (quoting López-

Carrasquillo v. Rubianes, 230 F.3d 409, 414 (1st Cir. 2000)).

In opposition, Plaintiffs argue that their affiliation with the NPP was a substantial and

motivating factor in their dismissal.  To further their argument, Plaintiffs posit they has established

causation because they were harassed and discriminated by Defendant Sanchez, directly and by

way of his subordinates, on account of their political affiliation, and this harassment led to their

termination.   (Docket No. 48.)   Nonetheless, as discussed in part *II* of the Court's Opinion and

Order, most of the evidence offered in support of this element cannot be considered by the Court

because it is inadmissible hearsay.  The only admissible evidence that remains in support of

Civil No. 14-1529 (GAG)

causation is Plaintiff Ortiz's deposition testimony, where she declares that Defendant Sanchez stated —in front of Plaintiffs— that NPP transitory employees would be left out [of the Consortium].  (Docket Nos. 48-1 at 6 ¶ 5; 36-2 at 17.)  Not only do Defendants deny having stated NPP employees would be left out, but they also counter arguing he offered Plaintiffs temporary employment positions at the Consortium, but they refused because the positions offered were short-term and temporary, and Plaintiffs expected permanent employment as they had been promised by their previous administrator.  (Docket No. 56 ¶ 5.)

The First Circuit has also recognized that while "'unsupported and speculative assertions regarding political discrimination will not be enough to survive summary judgment,' [the Court has] also made it clear that 'one rarely finds 'smoking gun' evidence in a political discrimination case,' and that 'circumstantial evidence must, at times, suffice.'"  Garcia-Gonzalez v. Puig-Morales, 761 F.3d 81, 100 (1st Cir. 2014) (quoting Vazquez, 134 F.3d at 36; Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 17 (1st Cir. 2011)).

The evidence provided is circumscribed.  Plaintiff Ortiz's deposition testimony, albeit self-serving, evinces Defendant Sanchez's threatening behavior towards his employees, prompted by their affiliation with the NPP.  Therefore, the Court finds that the record contains sufficient evidence that a reasonable jury could find that Plaintiffs' constitutionally protected conduct was a substantial or motivating factor behind the adverse employment action. Thus, Plaintiffs have established their *prima facie* case of political discrimination.

### B.  The Mt. Healthy Defense

The Court now addresses Defendants Mount Healthy defense.  Under Mt. Healthy, a defendant is given the opportunity to establish that it would have taken the same action regardless of the plaintiff's political beliefs.  Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 97 S.Ct. 568 (1977).  After a plaintiff establishes its *prima facie* case, the burden shifts to defendants who must

**Civil No. 14-1529 (GAG)**

establish that they would have taken the same action regardless of plaintiffs' political beliefs. Soto-Padro v. Public Buildings Auth., 675 F.3d, 1 6 (1st Cir. 2012); see also Vázquez-Valentín v. Santiago-Díaz, 385 F.3d 23, 30 (1st Cir. 2004).  The Mt. Healthy defense "deals with employment actions driven by 'mixed motives,' and provides that where there are both 'lawful' and 'unlawful' reasons for the adverse employment action, 'if the lawful reason alone would have sufficed to justify the [action],' then the employee cannot prevail." Soto-Padro, 675 F.3d at 6 (quoting McKennon v. Nashville Banner Pub. Co., 513 U.S. 352, 359 (1995)).

"[E]ven if a plaintiff shows an impermissible political motive, he cannot win if the employer shows that it would have taken the same action anyway regardless of Plaintiffs' political affiliation." Soto-Padro, 675 F.3d at 6 (citing Nereida-Gonzalez v. Tirado-Delgado, 990 F.2d 701, 706 n. 4 (1st Cir. 1993)).  Defendants assert the valid, lawful and only reason for the termination of Plaintiffs employment was the termination of the TANF agreement between the Family Department and the Consortium. Furthermore, Defendants argue that Plaintiffs' termination was a result of the conclusion of the agreement between the Family Department since Plaintiffs' temporary employment contracts were conditioned on the availability of program funds.  Id.  For this reason, Defendants posit that the conclusion of the agreement between the Family Department and the Consortium —and not Plaintiffs' affiliation with the NPP— was the basis for termination.  (Docket No. 35.)   Once the TANF Program ended due to the discontinued funds, Plaintiffs' temporary employment with the Consortium also ended.  Id.

Defendants stress the fact that the temporary employment contracts had fixed end dates that were analogous and conditioned to the date of termination of the agreement between the Consortium and the Family Department.   To further their defense that the termination completely lacked political motivation, Defendants point towards the multiple extensions of Plaintiffs' employment contracts.  Id. at 15.  Every time the agreement between the Family Department and

Civil No. 14-1529 (GAG)

the Consortium was extended, so were Plaintiffs employment contracts.  It was not until the complete termination of the TANF Program that Plaintiffs were terminated.  Id.

The employment contracts expired on March 31, 2014, when "the Family Department reassumed its role as the delegate agency and the Consortium lost the funds to support the program." (Docket No. 35 at 17.)  Consequently, Defendants argue they had no other choice but to terminate the contracts under the TANF Program because said program no longer existed.  For this reason, Defendants argue Plaintiffs political discrimination claims should be dismissed under Mt. Healthy, given that the lawful reason behind Plaintiffs' dismissal —the termination of the TANF Program— demonstrates that "they would have taken the same action regardless of plaintiffs' political beliefs."  The Supreme Court has described the Mt. Healthy defense this way: it deals with employment actions driven by "mixed motives," and provides that where there are both "lawful" and "unlawful" reasons for the adverse employment action, if the lawful reason alone would have sufficed to justify the [action],' then the employee cannot prevail."  Soto-Padro, 675 F.3d at 6 (internal quotations omitted).   In other words, Plaintiffs dismissal is appropriate because the record shows that Defendants would have terminated Plaintiffs' employment contracts even if they were PDP affiliates or sympathizers.  Soto-Padro, 675 F.3d at 6;  see also Corcino-Rodriguez v. State Ins. Fund Corp., 965 F. Supp. 2d 187, 207 (D.P.R. 2013). The termination of Plaintiffs' employment contracts under the TANF Program is a legitimate, non-discriminatory reason for termination, and not targeted directly at Plaintiffs because all other contracts under the program were terminated.  Not to mention the offer and extension letters given to Plaintiffs for every temporary contract expressly state that the temporary employment is subject to the availability of TANF Program funds.

Plaintiffs oppose arguing that the distinction between the TANF Program and the WIA Program is irrelevant.  (Docket No. 48 at 9.)  Plaintiffs stand by their position that they were

Civil No. 14-1529 (GAG)

unlawfully discriminated against because of their political affiliation with the NPP given that Defendant Sanchez did not offer Plaintiffs any alternative and terminated their employments and instead opted to favor his fellow PDP affiliates.  (Docket No. 48 at 9.)

"[A]fter defendant has introduced evidence sustaining his Mt. Healthy defense, plaintiff still will prevail if it is found that she would not have been fired *but for* her political affiliation." Acosta-Sepulveda v. Hernandez-Purcell, 889 F.2d 9, 13 (1st Cir. 1989) (citations omitted).   The First Circuit has rejected the argument that an audit that disproportionately impacts on a certain political party defeats an otherwise valid Mt. Healthy defense.  See Corcino-Rodriguez, 965 F. Supp. 2d. at 208 (citing Aguiar-Carrasquillo v. Agosto-Alicea, 445 F.3d 19, 26 (1st Cir. 2006)). Thus, Plaintiffs allegation here, that NPP affiliates were impacted by the termination of the agreement is not, by itself, indicative of political discrimination.   "The existence of disproportionate impact is insufficient to bring a case of political discrimination to trial."  Id.  In this case, the termination of Plaintiffs contracts was the result of the termination of the TANF agreement.  The layoff plan that took place in the case at bar was not selective or targeted at Plaintiffs; it was program wide, "focused on positions not persons."  Soto-Padro, 675 F.3d at 6. The Court recognizes that these valid personnel practices can have a collateral effect on those employees not affiliated with the administration in power.   Said collateral effect has been recognized by the First Circuit as natural to any change in administration, and cannot be catalogued as *per se* political discrimination.

> [i]f uniformly applied personnel practices, predicated on legitimate reasons, result in terminations, those terminations are not unconstitutional because those affiliated with one political party are disproportionately impacted. It is in the nature of a change in administrations that job actions by the new party in power will have a disparate impact on members of the outgoing party.

Aguiar-Carrasquillo, 445 F.3d at 26 (quoting Sánchez-López v. Fuentes-Pujols, 375 F.3d 121, 140 (1st Cir. 2004)).

Civil No. 14-1529 (GAG)

In light of foregoing, the Court finds that this is a classic example of the <u>Mt. Healthy</u> defense. Defendants have successfully demonstrated that the termination of Plaintiffs' employment contracts was lawful and that the same action would have been taken in spite of their political affiliation. Considering that the <u>Mt. Healthy</u> defense applies to the case at bar, and as reasoned above and that the record is devoid of evidence to rebut Defendants' legitimate non-discriminatory reason for the termination of Plaintiffs' employment contracts, Plaintiffs' political discrimination claims cannot prevail.

Accordingly, Plaintiffs' claims under Section 1983 for violation of their First Amendment rights are **DISMISSED**. Defendants' Motion for Summary Judgment at Docket No. 35 is **GRANTED**.[9]

### C. Supplemental State Law Claims

#### 1. Law 100

Law 100 prevents private enterprises or government agencies acting as a private business from discriminating by reason of age, race, color, religion, gender or national origin or social condition. <u>Mulero Abreu v. Oquendo-Rivera</u>, 729 F. Supp. 2d 498, 524 (D.P.R. 2010). Puerto Rico's Law 100 makes it unlawful for an employer to discriminate against an employee because of the employee's political affiliation. Tit. 29, § 146. To state a claim under Puerto Rico's Law 100, an employee must allege: (1) that he was actually or constructively discharged, and (2) that

---

[9] Parallel to the First Amendment of the U.S. Constitution, Section I, Article II of the Puerto Rico Constitution protects public employees from political discrimination. P.R. CONST. Art II, § 1. Likewise, the Puerto Rico Supreme Court has incorporated the <u>Mt. Healthy</u> defense to political discrimination claims under the Puerto Rico Constitution. <u>See</u> <u>S.L.G. v. Alcalde De Aguas Buenas,</u> 2001 PRSC 66 (P.R. 2001); <u>Camacho Torres v. AAFET</u>, 2006 PRSC (P.R. 2006). In light of the Court's reasoning dismissing Plaintiffs' First amendment political discrimination claims under the <u>Mt. Healthy</u> defense, Plaintiffs' political discrimination claims under the Puerto Rico Constitution are also **DISMISSED with prejudice.**

Civil No. 14-1529 (GAG)

the decision was discriminatory.  Velázquez-Fernández v. NCE Foods, Inc., 476 F.3d 6, 11 (1st Cir. 2007).

The Puerto Rico Supreme Court has repeatedly held that the cardinal objective of Law 100 "'[w]as to protect employees in the private sector from all types of discrimination although, via exception, the protection covered all employees of government agencies or instrumentalities that operate as private businesses or companies.'"  Santini-Rivera v. Serv. Air, Inc., 1994 P.R-Eng. 909, 527, 137 P.R. Dec. 1, 4 (1994).  At the time of Law 100's enactment, public employees like Plaintiffs were already protected against discrimination—by the Puerto Rico Constitution. See P.R. CONST. Art. II, § 1.  Law 100, therefore, was the vessel by which the Puerto Rico Legislature extended such protections against discriminations to employees in the private sector.  Santini-Rivera, 1994 P.R.-Eng. 909, 137 P.R. Dec. at 21 n. 6.  It necessarily follows that the Commonwealth of Puerto Rico falls short of meeting Law 100's definition of "employer."  The foregoing legal principles clearly point out that the Consortium, as a nonprofit government instrumentality, also falls outside the purview of Law 100.  See Marquez-Ramos v. Puerto Rico, No. Civ. 11-1547 (SEC), 2012 WL 1414302, at *10 (D.P.R. 2012).

Plaintiffs' claims are brought against Defendants in their personal and official capacities. (Docket No. 1 ¶¶ 31-32.)  Because Law 100 claims cannot be brought against state actors in their official capacity, Plaintiffs' Law 100 claims against Defendants in their official capacities are **DISMISSED with prejudice**.

The Court now turns to Plaintiffs' claims against Defendants in their individual capacities. In Rosario-Toledo v. Distribuidora Kikuet, 151 D.P.R. 634 (2000), the Puerto Rico Supreme Court held that, unlike Title VII, Law 100 does provide for the imposition of supervisor liability on the president of a corporation when he is plaintiff's supervisor, and is personally responsible for causing plaintiff's injury.  The Court's holding was later extended to include not only the actual

Civil No. 14-1529 (GAG)

employer or the owner and the president of the corporation, but also any other person responsible for the illegal conduct, without any distinction. Rosario-Toledo, 151 P.R. Dec. 634 (2000) ("Rosario I"); Rosario-Toledo v. Distribuidora Kikuet, Inc.,153 P.R.Dec. 125 (2001) ("Rosario II"); Lamboy-Ortiz v. Ortiz-Vélez, 630 F.3d 228, 240 (1st Cir. 2010); Pacheco Bonilla v. Tooling & Stamping, Inc., 281 F.Supp. 2d 336 (D.P.R. 2003); Rodríguez-Narváez v. Pereira, 552 F. Supp. 2d 211, 217-18 (D.P.R. 2007) (citing Rosario I).

Personal liability under Law 100 applies "to any supervisor responsible for an act of discrimination." Rodríguez-Narváez, 552 F. Supp at 218. However, this Court is split as to whether the individual liability applies to any employee, irrespective of its employer or any individual employed by an entity covered by Law 100. Compare Rodríguez-Narváez, 552 F. Supp at 218; Pacheco-Muniz v. Gonzalez-Cruz, No. CIV. 12-2058 (JAG), 2014 WL 1320276, at *12 (D.P.R. 2014) with Marquez-Ramos, No. Civ. 11-1547 (SEC), 2012 WL 1414302, at *10.

The undersigned reasons with Marquez-Ramos in reading Rorario I and Rosario II as extending Law 100's individual liability to any individual responsible —not just supervisors— for the discriminatory conduct, as long as that person is employed by a covered entity. Marquez-Ramos, No. Civ. 11-1547 (SEC), 2012 WL 1414302, at *10. In other words, Law 100's individual liability applies to individuals employees of a covered entity within the scope of Law 100.

In light of the above finding that the Consortium is not an employer as defined by Law 100, Plaintiffs' Law 100 claims against Defendant Sanchez in his individual capacity also fall outside the scope of Law 100. As such, Plaintiffs' Law 100 claims against Defendant Sanchez in his individual capacity are also **DISMISSED with prejudice.**

**Civil No. 14-1529 (GAG)**

### V.        Conclusion

For the foregoing reasons, the Court **GRANTS** Defendants' Motion for Summary Judgment at Docket No. 35.   Plaintiffs' claims are hereby **DISMISSED**.   Judgment shall be entered accordingly.

**SO ORDERED.**

In San Juan, Puerto Rico this 29th day of March, 2015.

*s/ Gustavo A. Gelpí*

GUSTAVO A. GELPI

United States District Judge